# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00099-CV

**Johnny Cantu, Feliberto De La Garza, John Epperson, Roger Hutchison,
Roel R. Morin, Alan Rice, Luciano Sanchez, Rodolfo R. Sanchez,
David Torres, and W. A. Westerkom, Appellants**

**v.**

**Gray & Becker, P.C., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. GN103879, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING**

---

Appellants are ten of the original thirty-eight individual defendants in the proceedings below who opted out of a court-approved settlement agreement regarding attorney=s fees.[1] Following the district court=s rendition of a final judgment, appellants contend that the district court erred by denying appellants= (1) special appearance; (2) motion to transfer venue; (3) motion to stay proceedings while they pursued an interlocutory appeal; (4) motion for a jury trial; and (5) the right during trial on the merits to rebut Gray & Becker=s case in chief, to present a defense, and to present proof of illegality or lack of contract formation. We will affirm the district court=s judgment.

---

[1] This Court has addressed two appeals related to the same attorney=s fees settlement agreement. *See De la Garza v. Gray & Becker*, 03-02-135-CV, 2002 Tex. App. LEXIS 5460 (Tex. App.CAustin July 26, 2002) (not designated for publication); *Garcia v. Gray & Becker*, 03-02-00372-CV, 2002 Tex. App. LEXIS 6883 (Tex. App.CAustin September 26, 2002) (not designated for publication).

## Background

In 1997, members of three unions at the Corpus Christi Army Depot wished to pursue grievances against the United States Army regarding their asbestos exposure claims. The three unions were the exclusive representatives of their members and were authorized under collective bargaining agreements with the Army to pursue grievances on behalf of their members. The unions contracted with Gray & Becker to represent their members= interests in collective bargaining grievance proceedings against the Army. The unions= representatives entered into attorney=s fee agreements with Gray & Becker and agreed to pay Gray & Becker a contingent fee in the amount of 33-1/3% of any recovery. Gray & Becker represented the unions and their members throughout the grievance process and a labor arbitration proceeding. In 2000, the arbitration resulted in the Army paying $82 million to the unions= members. The arbitrator also ordered the Army to pay Gray & Becker attorney=s fees in accordance with the unions= contingent attorney=s fee contracts. The Army appealed the arbitration order to the Federal Labor Relations Authority. Gray & Becker represented the unions= members during the appeal. The Federal Labor Relations Authority modified the arbitration order only in regard to the attorney=s fees and directed the Army to request its agency head to permit deductions from each of the employees= awards to pay attorney=s fees in accordance with the contingent fee contracts. The Army=s agency head at the Department of Defense denied the Army=s request, and Gray & Becker was left to its own devices to collect its attorney=s fees.

Gray & Becker then commenced a lawsuit and alleged that the employees who received portions of the arbitration award were obligated to pay contractual attorney=s fees to Gray & Becker in the amount of 33-1/3% of each employee=s gross recovery under the award; alternatively, employees who had executed an Agreement for Compromise & Payment of Contractual Attorney=s Fees (the A27-1/2%@

Agreement) were obligated to pay contractual attorney=s fees of 27-1/2% of the employee=s gross recovery under the award. The law firm of Harris & Greenwell represented a number of employees who filed counterclaims against Gray & Becker asserting that as eligible employees under the arbitration award they were *not* obligated to pay attorney=s fees to Gray & Becker due to Gray & Becker=s improper, unlawful, or tortious acts in negotiating the attorney=s fee contracts. In November 2001, Harris & Greenwell, on behalf of the employee defendants, and Gray & Becker filed with the district court an AAgreement for Class Action Resolution and Settlement (subject to Court approval).@

The agreement stated that the employees= prospects of prevailing on their claims were uncertain as the court had ruled adversely on similar employees= claims and defenses in another case, and that the employees would be subject to liability and judgment for additional attorney=s fees incurred by Gray & Becker in the prosecution of the enforcement and collection of their claims. The parties agreed that it was in all of their best interest to have one court address and resolve the pending claims instead of having multiple lawsuits in various forums and venues. Gray & Becker, in compromise and settlement of its claims and the employees= counterclaims, agreed to accept 25% of each employee=s gross recovery under the award as full and final settlement of the employees= contractual attorney=s fees obligation to Gray & Becker. Gray & Becker agreed to provide, at its expense, notice (prepared by Harris & Greenwell) to all class members of the class certification, the settlement, and the fairness hearing. Further, Gray & Becker agreed to provide the class members with final notice of the court=s approval of the class settlement. The district court defined and certified two classes of individuals, named class representatives, appointed class counsel for both classes, approved the notice to be sent to the class members, and ordered that the notice be mailed

3

to each member of the two classes.  Additionally, the district court tentatively approved the terms of the proposed settlement agreement and set the date for a fairness hearing.

All class members were sent a detailed notice by direct mail based on the Army=s address list for current and former employees.  Further, a detailed notice was published in a Corpus Christi daily newspaper, and Gray & Becker held two open meetings at the Corpus Christi Army Depot.  The district court held the fairness hearing and rendered a final judgment.  The judgment contained three lists of individuals:  those individuals covered by the judgment; those individuals excluded from Class I as a result of their request to opt out in accordance with the notice of class action; and those individuals who were excluded from Class II as a result of their request to opt out, after receiving the notice of class action.[2]

*Underlying suit against individuals who opted out*

---

[2] Further, the judgment ordered each class member to pay 25% of the gross amount of recovery under the arbitration award, and declared that upon such payment, either through direct pay or garnishment, the individual would fully satisfy any claim Gray & Becker might have against the individual.  The judgment further ordered each individual to pay 25% of the gross recovery within ten days of receiving the class members= portion of the arbitration award.  If not paid within ten days, those non-paying individuals were ordered to pay Gray & Becker 33-1/3% of the employee=s gross portion of the award plus reasonable and necessary attorney=s fees incurred by Gray & Becker in the prosecution and collection of its fees.

Gray & Becker commenced the underlying proceeding against thirty-eight individuals who responded to the court-ordered notice and opted out of the settlement agreement. Gray & Becker sought temporary restraining orders, temporary injunctions and, if necessary, permanent injunctions enjoining the appellants from failing or refusing to pay the 33-1/3% of their award into the registry of the court; disposing of, spending, or diverting 33-1/3% of their award or accepting or otherwise receiving 33-1/3% of their award without paying Gray & Becker the 33-1/3% owed to Gray & Becker as contractual attorney=s fees. Gray & Becker also sought a declaratory judgment declaring that the fee agreements were valid and enforceable contracts and that the appellants were obligated to pay Gray & Becker 33-1/3% of their award as provided in the fee agreements. All appellants were served with process.

The district court issued a temporary restraining order and then rendered a temporary injunction. The appellants filed an unsworn motion which included a special appearance, a plea to the jurisdiction, a motion to transfer venue, and an original answer subject to the plea to the jurisdiction and motion to transfer venue. Substantively, however, the motion addressed only the venue issue and provided a general denial. Although the motion referred to supporting affidavits by Joe Gonzales and Lazaro Quintanilla, neither affidavit was attached to the motion or appears in the clerk=s record. On February 5, 2002, notice of trial was sent and trial on the merits was set for February 19.

*At the hearing*

On February 19, the district court called the case for trial. The same morning, appellants filed an amended plea to the jurisdiction and motion to transfer venue. In the portion of the motion addressing the plea to the jurisdiction, the appellants, without any supporting authority, urged that the district court was without subject matter jurisdiction and that Gray & Becker should have presented its claims against appellants to the National Labor Relations Board. Further, appellants, again without supporting authority, urged that Gray & Becker=s claims were governed by the Federal Fair Debt Collection Act and should have been brought in federal court. In the venue portion of the motion, appellants urged that venue was not proper in Travis County because none of the appellants resided in Travis County and none of them signed any contracts in the county. Appellants urged that venue was proper in Nueces County.

At the hearing, the district court heard the plea to the jurisdiction and questioned appellants= counsel regarding the whereabouts of the affidavits which counsel contended supported the plea. The court noted that there were no affidavits attached to the motion nor were there any affidavits in the clerk=s record. The court recessed the hearing to allow appellants= counsel an opportunity to locate the affidavits. When counsel was unable to locate the affidavits in the clerk=s files, counsel requested that the district court take judicial notice of the affidavits. The district court declined to do so. Counsel attempted to make an offer of proof. Without the affidavits, however, he was unable to do so. The district court then denied the special appearance. Appellants= counsel then stated that he wanted to appeal the court=s ruling on the special appearance and asked the district court to grant his motion for continuance and stay any further proceedings pending the appeal. The district court denied the request for a continuance, stating that there was no written motion before him for consideration. The court also denied the motion to transfer venue. The court then

recessed the hearing until the next day for the trial on the merits.  After the hearing, appellants filed a jury demand.

### *Trial on the merits*

The next day the district court called the case for a bench trial.  The district court opened the hearing by requesting counsel to tender to the court orders for him to sign regarding the court=s denials of the special appearance and the motion to transfer venue from the previous day=s hearing.  Appellants= counsel insisted that the court sign the orders before the court proceeded with the trial on the merits, contending that it was imperative that the court sign the orders and stay the proceedings so that appellants could take an interlocutory appeal.  The court asked appellant=s attorney for any statutory authority or rule of procedure requiring that the court sign the order before proceeding with a trial on the merits.  Unable to produce a rule or statute, appellant=s counsel continued to insist that the court sign an order and stay proceedings.  The district court cited appellant=s attorney for contempt, stating that she had interfered with and obstructed the court process.  When appellants= attorney continued to insist that the district court sign an order, the district court placed appellants= attorney under arrest.  Thereafter, the district court signed the order, recused himself from the proceedings, and recessed the case until the following morning.

The clerk=s record reflects that the next day, with a different district judge presiding, the district court rendered a final judgment in favor of Gray & Becker.  Appellants, however, declined to request a record of these proceedings from the court reporter.

### *Final judgment*

7

The final judgment provided a detailed analysis of the amount of money each appellant would receive from the Army, along with a calculation of the 33-1/3% each would owe Gray & Becker as attorney=s fees. The judgment denied all claims, if any, raised by appellants against Gray & Becker. In addition, the judgment provided that Gray & Becker was entitled to recover reasonable and necessary attorney=s fees in the amount of $3500 from each appellant to prosecute the case through trial. Additionally, the judgment ordered that Gray & Becker recover attorney=s fees of $5000 from each appellant in the event appellants filed a motion for new trial or an appeal. Finally, the judgment ruled that Gray & Becker was entitled to postjudgment interest, and again these sums were specifically referenced as to each appellant.

## Discussion

### *Special Appearance*

Appellants contend that the district court erred in failing to grant their special appearance. Appellants= only contention on appeal is that based on statements in the affidavit of Joe Gonzales, the district court erred in denying the plea to the jurisdiction. Appellants argue that Gonzales=s affidavit accompanied the plea to the jurisdiction and was before the district court for its consideration. Appellants further contend that the trial court erred in denying their requests to stay the trial on the merits so that they could appeal the district court=s denial of their special appearance. Gray & Becker responds that no affidavits were attached to the special appearance motion or located elsewhere in the record before the trial court. Further, Gray & Becker responds that the district court did not err in denying appellants= special appearance and refusing to stay the trial proceedings because the substance of the unsworn motion failed to present any special

appearance issues. Gray & Becker contends that the motion raised only venue issues for the district court=s consideration.

The purpose of a special appearance is for a defendant to object to the court=s jurisdiction over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts in this state. *See* Tex. R. Civ. P. 120a. A special appearance is not for the purpose of raising lack of jurisdiction over the subject matter of the case. *Estate of Griffin v. Sumner*, 604 S.W.2d 221, 226 (Tex. App.CSan Antonio 1980, writ ref=d n.r.e.). The burden of proof and persuasion is on the nonresident defendant contesting the court=s jurisdiction by special appearance. *Id.*

Texas courts are courts of general jurisdiction and have personal jurisdiction over Texas residents and all other persons who are amenable to process issued by the courts of this state. Appellants= special appearance motion did not allege, aver, or establish through any prima facie evidence that the appellants were not amenable to process issued by the courts of this State. In their brief, appellants concede that they are indeed Texas residents. Indeed, appellants= brief provides, Asince defendants/intervenors[3] are Texas residents, the standard for general jurisdiction defects would not be met.@ In addition, Rule 120a provides that a special appearance must be made by a sworn motion. Neither appellants= original motion nor their amended motion was sworn and neither motion included any sworn evidence supporting the motion. We conclude that the district court did not err in denying appellants= special appearance.

---

[3] It is unclear why appellants refer to themselves as Adefendant/intervenors@ as there is nothing in

the record reflecting any intervening parties in these proceedings.

We next consider the district court=s refusal to stay proceedings so that appellants could pursue an interlocutory appeal of the denial of their special appearance. A person may appeal from an interlocutory order of a district court that Agrants or denies the special appearance of a defendant under Rule 120a@ except in particular situations that are not before us in these proceedings. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (West Supp. 2003). Here, although the district court received a motion which contained in its title the words Aspecial appearance,@ the court was not presented with a motion or any evidence that substantively invoked Rule 120a or involved in any way special appearance issues. We conclude that the district court=s failure to stay proceedings to allow the appellants to pursue an interlocutory appeal did not affect the substantial rights of the appellants. *See* Tex. R. App. P. 44.2(b). We overrule appellants= first and second issues.

*Venue*

In their third issue, appellants contend, without citing any authority, that the district court erred in denying their motion to transfer venue. Again, appellants urge that based on statements in Joe Gonzales=s affidavit, the attorney=s fee contracts were signed by him in Nueces County and faxed to Mr. Bishop=s fax number in Austin and that nothing occurred in Travis County that would sustain venue there. Gray & Becker responds that Joe Gonzales=s affidavit was never before the trial court nor was any other evidence disputing Gray & Becker=s venue facts as alleged in the petition. Additionally, Gray & Becker responds that appellants= motion did not refer the district court to any statutory provision that mandated that the venue for this case be in Nueces County.

11

In paragraph forty of Gray & Becker=s original petition, Gray & Becker asserted the following:

40. Gray & Becker and the Unions entered into the fee agreements which are the subject and basis of this suit in Austin, Travis County, Texas and as a result of Gonzales and Quintanilla soliciting Gray & Becker in Austin to represent their unions and to enter into the fee agreements. The fee agreements did not become operative and effective unless and until Gray & Becker signed the fee agreements; Gray & Becker signed the fee agreements in Austin, Travis County, Texas. In addition, most of the work (at least 90%) which Gray & Becker has performed in performance of the fee agreements and in performance with the attorney/client relationships which are the subject and basis of this suit has been and continues to be performed in Austin, Travis County, Texas.

Accompanying Gray & Becker=s petition was the verified affidavit of Brian Bishop, the attorney in charge for Gray & Becker in these proceedings. In his affidavit, Bishop stated that he had reviewed the facts alleged in the petition and knew them to be true and correct.

Venue selection presupposes that the parties to the lawsuit have choices and preferences about where their case will be tried. *See* Tex. Civ. Prac. & Rem. Code Ann. '' 15.001-.040 (West 2002); *Wilson v. Texas Parks & Wildlife Dept.*, 886 S.W.2d 259, 260 (Tex. 1994) (citing *Maranatha Temple, Inc. v. Enterprise Prod. Co.*, 833 S.W.2d 736, 741 (Tex. App.CHouston [1st Dist.] 1992, writ denied)). Venue may be proper in more than one county under general, mandatory, or permissive venue rules. *Wilson*, 886 S.W.2d at 260. The plaintiff is given the first choice of venue selection in the filing of the lawsuit. *Id.* If the plaintiff=s choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff. Tex. Civ. Prac. & Rem. Code Ann. ' 15.063 (West 2002); Tex. R. Civ. P. 86. The question of proper venue is raised only if a defendant

objects to the plaintiff=s venue choice and properly challenges that choice. Tex. R. Civ. P. 86. If a plaintiff chooses a county of proper venue, and the choice is supported by proof as required by Rule 87, no other county can be a proper venue in that case. *Wilson*, 886 S.W.2d at 261; Tex. R. Civ. P. 87. This rule gives effect to the plaintiff=s right to select a venue. *Wilson*, 886 S.W.2d at 261.

In applying these rules, two bases exist for challenging venue: either (1) the county where the proceedings are pending is not a proper county as no permissive venue exists, or (2) mandatory venue lies in another county. *See* Tex. R. Civ. P. 86(3)(a), (b). Appellants= motion to transfer venue did not allege either ground. Appellants= motion stated simply that Anone of the defendants reside in Travis County, Texas [and none] have []ever signed a contract in Travis County.@ Further, appellants= brief states only that Avenue concerning the contract(s) would be proper in Nueces County.@ Based on these contentions alone, appellants argue that the court was required to transfer venue to Nueces County.

All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. *See Geochem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex. 1998); Tex. R. Civ. P. 87. At no time during the proceedings have the appellants specifically denied or otherwise controverted the venue facts alleged by Gray & Becker in its petition. Appellants= motion, therefore, did not properly challenge nor did it specifically deny any of Gray & Becker=s venue allegations. Gray & Becker=s pleadings, accompanied by Brian Bishop=s verified affidavit, constituted prima facie evidence of proper venue. The district court correctly took as true the venue facts alleged by Gray & Becker and determined that venue was proper in Travis County because all or a substantial part of the events giving rise

to the claim occurred in Travis County. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a)(1) (West 2002). We overrule appellants= third issue.

### *Jury Demand*

Appellants contend that the district court erred in denying their request for a jury trial. A party must file a written request for a jury trial Aa reasonable time before the date set for trial of the cause on the non-jury docket, but not less than 30 days in advance.@ Tex. R. Civ. P. 216. Appellants filed their demand for a jury trial following the district court=s denial of their special appearance late in the afternoon on the day before trial.

Appellants waived their complaint by failing to object when the district court commenced the non-jury trial. *See Rodriguez v. Dept. of Mental Health*, 942 S.W.2d 53, 56 (Tex. App.CCorpus Christi 1997, no writ). In the event their contention is not waived, their request was untimely. A jury request made on the day before trial is untimely. *See Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985). We conclude that the district court did not err in denying appellant=s last minute demand for a jury trial. We overrule appellants= fourth issue.

### *Denial of right to rebut case in chief and present evidence of affirmative defenses*

Appellants contend in their fifth and sixth issues that the district court abused its discretion during the trial on the merits by denying appellants the right Ato rebut evidence@ and by not allowing appellants Aan opportunity to make any offers of proof.@ Further, appellants contend that the district court Aabused its discretion in failing to permit appellants to present evidence on the issue of lack of contract

formation or illegality.@ These complaints relate to issues that arose during the trial on the merits. Appellants requested that the court reporter prepare a record from the February 20 proceedings on the merits for this appeal, however, they failed to designate or request that the court reporter prepare a record from the February 21 proceedings on the merits for this appeal. Further, appellants failed to cite to any evidence in the record before us to support or substantiate these claims.

When an appellant fails to request from the court reporter a complete reporter=s record or fails to comply with the partial reporter=s record provisions of Texas Rules of Appellate Procedure 34.6, the appellate court will presume that the unrequested records contain matters supporting the district court=s judgment. *See Sandoval v. Commission for Lawyer Discipline*, 25 S.W.3d 720, 722 Tex. App.CHouston [14th Dist.] 2000, pet. denied)*; see also Favaloro v. Comm=n for Lawyer Discipline*, 994 S.W.2d 815, 820-21 (Tex. App.CDallas 1999, no pet.). Issues dependent on the state of the evidence cannot be reviewed without a complete record, including a reporter=s record. *Sandoval*, 25 S.W.3d at 722. Without a complete record, issues dependent on the state of the evidence at trial will be deemed to have been waived. *Favaloro*, 994 S.W.2d at 820-21.

Without a reporter=s record from the February 21 hearing, we are unable to discern the bases for appellants=claims. Appellants failed to request a record showing these claims were preserved for appellate review. *Id.* Consequently, appellants have waived these complaints. *Id.* We overrule appellants= fifth and sixth issues.

## Conclusion

Having addressed all of appellants= contentions, we affirm the district court=s judgment.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   November 21, 2002

Do Not Publish